## PURCHASE AND SALE AGREEMENT

**THIS AGREEMENT** made this 31ˢᵗ day of October, 2011, by and between **STROSNIDER DRUG STORE, INC.**, a West Virginia corporation, d/b/a Sav-Rite Pharmacy, of the address of 50 Lincoln Street, Post Office Box 600, Kermit, Mingo County, West Virginia 25674 ("Seller"), **STEVEN D. WILLIAMS**, of the address of Post Office Box 361, Clearfield, Kentucky 40313 ("Personal Guarantor"), and **SOUTHFORK GENERAL MANAGEMENT LLC**, a Kentucky limited liability company, of the address of Post Office Box 361, Clearfield, Kentucky 40313 ("Buyer").

### WITNESSETH:

In consideration of the mutual covenants, agreements, representation and warranties herein contained, the parties agree as follows:

1. TERMS OF SALE

    1.1   *Transfer of Kermit Store.* Subject to the terms and conditions of this Agreement, Buyer will acquire from Seller, and Seller will transfer and convey unto Buyer, Seller's "Sav-Rite" Pharmacy assets, as same are located at Kermit, Mingo County, West Virginia (hereinafter "Kermit Store") including the following items at, on, or appurtenant to the Kermit Store:

    (a)   All inventory, furniture, fixtures and equipment, signage and goodwill;

    (b)   All patient records and information;

    (c)   As of November 1, 2011, leases for the Kermit Store in the name of Seller, as lessee, will terminate by written Termination of Lease Agreement by Mutual Agreement, and leases to Buyer, as lessee, effective November 1, 2011, from Charles M. Mills and Everett L. Zeek will be in force and effect. Copies of said terminations and leases are attached as EXHIBIT A;

    (i)   Real estate taxes, to the extent payable by Seller under the leases, shall be prorated as of the date of closing.

    (d)   Seller's telephone number and post office box for the Kermit store.

    All of which may be hereinafter referred to as "Kermit Store."

Seller's cash, funds in bank accounts, accounts receivable and accounts payable and other claims and indebtedness shall remain with Seller. Buyer will acquire Seller's corporate bank account, but no funds from Seller. All accounts receivable due from business generated on or before October 31, 2011, but collected by Buyer thereafter, shall be paid by Buyer to Seller, **and paid to: "Sav-Rite Pharmacy Special Account"** on each Friday, and Buyer shall furnish Seller copies of Explanation of Benefits (EOB) for said accounts receivable. All accounts receivable generated after October 31, 2011, shall be the property of Buyer.

1.2  *Seller's Encumbrances and Liabilities.* The sale and transfer of Seller's Kermit Store assets shall, at the time of closing, be free and clear of all obligations, security interests, liens and encumbrances, of any kind, except for:

(a)  the leases (Exhibit A, which leases are being assigned to and assumed by Buyer); and

(b)  those accounts payable and other claims and indebtedness which shall remain with Seller, including audit recoupments related to prescriptions processed and dispensed prior to closing date.

1.3  *Purchase Price.* The purchase price for Seller's Kermit Store assets is One Million Three Hundred Fifty Thousand Dollars ($1,350,000.00), which shall be allocated as follows: Three Hundred Thousand Dollars ($300,000.00) inventory; Three Hundred Thousand Dollars ($300,000.00) equipment and fixtures; and Seven Hundred Fifty Thousand Dollars ($750,000.00) goodwill, etc. The parties shall each complete Form 8594 based on this allocation and that form with their respective tax returns for the year of sale. The purchase price shall be payable as follows:

On the date of closing, Buyer will pay unto Seller Four Hundred Thousand Dollars ($400,000.00) by cashier's check, and will execute two (2) Promissory Notes and all security documents to assure the payment of the remaining Nine Hundred Fifty Thousand Dollars ($950,000.00) of the purchase price.

The first Promissory Note in the amount of Two Hundred Thousand Dollars ($200,000.00) shall be interest free and provide for two payments: The first payment in the amount of One Hundred Thousand Dollars ($100,000.00) will be due ninety (90) days after the date of closing (also the date of this Promissory Note). The second payment in the amount of One Hundred Thousand Dollars ($100,000.00) will be due One Hundred Fifty (150) days after the date of closing. This Promissory Note will be secured by a Security Agreement and UCC Financing Statement, copies of which are attached as EXHIBIT B. This Promissory Note will be personally guaranteed by Steven D. Williams, of the address of Post Office Box 361, Clearfield, Kentucky 40313.

The second Promissory Note in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00) shall bear interest at the rate of 4.25% per annum from January 1, 2012, and shall be paid in sixty (60) equal payments of Thirteen Thousand Eight Hundred Ninety-seven and 17/100 Dollars ($13,897.17) with the first payment being due on February 1, 2012, with like payments due on the second day of the month of the next fifty-nine (59) months. This Promissory Note will be secured by a Security Agreement and UCC Financing Statement, copies of which are attached as EXHIBIT C. This Promissory Note will be personally guaranteed by Steven D. Williams, of the address of Post Office Box 361, Clearfield, Kentucky 40313.

The Buyer agrees to perform every obligation of the Promissory Notes and Security Agreements in favor of Seller, as if fully set forth in this agreement.

Should Seller, a West Virginia corporation, be dissolved prior to full payment of either of the Promissory Notes, Buyer's payment shall be made one-half (½) to Jim Wooley and one-half (½) to Faye Wooley, as they each own one-half (½) of the outstanding common stock of Seller.

1.4  *Closing.* The consummation of the transactions contemplated herein (the "Closing") shall take place at the law offices of Paul E. Pinson, 101 Dickinson Street, Williamson, West Virginia, at 4:00 o'clock p.m., on Monday, October 31, 2011. The Kermit Store shall be owned by Seller until 11:59 o'clock p.m., on October 31, 2011, and the Kermit Store shall be owned by Purchaser thereafter.

1.5  *Transfer of Licenses and Permits.* Seller shall sign and deliver at Closing all documentation to transfer to Buyer all licenses or permits from the appropriate licensing agencies as same apply to the Kermit Store, including: State Pharmacy Permit, DEA Permit, NPI # and NCPDP #. Seller represents that all permits and licenses referenced herein are in good standing with the appropriate agency, and Seller has neither created nor allowed encumbrance or limitation to the transfer of these permits and licenses to Buyer. Seller, by Power of Attorney, will allow Buyer to utilize all licenses, permits, insurance numbers, etc., until Buyer has obtained the same.

1.6  *Access and Information.* Buyer has been provided with Seller's books, records, contracts and commitments (other than Seller's minute book and stock records) relative to the Kermit Store, and no other business records have been requested.

1.7  *Conduct of Business.* Seller covenants, represents and warrants in favor of Buyer that pending completion of the Closing, unless otherwise agreed to in writing by Buyer:

    (a)    Seller shall not engage in any sale, enter into any transaction, contract or commitment, incur any liability or obligation or make any disbursement, not in the ordinary course of business.

    (b)    Seller shall carry and continue in force through the Closing all fire and extended coverage insurance and theft, liability and other insurance set forth in the Schedule of Insurance annexed hereto.

    (c)    Seller shall repair and maintain its real estate, buildings and improvements, parking lots, vehicles, furniture, fixtures, machinery and equipment in good state of repair through the date of Closing, ordinary wear and tear excepted, and shall not dispose of any of such items without the Buyer's consent.

2. REPRESENTATION AND WARRANTIES OF SELLER

Seller represents and warrants as of the date hereof and as of the Closing to Buyer, as follows:

2.1 *Organization and Authority.* To the extent the assets and rights transferred herein are title in a corporation or limited liability company, Seller warrants that such entities are duly organized, validly existing and in good standing under the laws of the State in which it is duly qualified to do business, and has full power and authority to carry on its current business and to own, use, sell its assets and properties and that their respective Board of Directors and Shareholders, member and managers have duly authorized the execution and delivery of this agreement to Buyer and the carrying out of its provisions. At the Closing, Seller shall furnish Buyer duly certified copies of such resolutions.

2.2 *Contracts, Licenses, Permits and Approvals.*

    (a)    Seller has no existing contracts or commitments extending beyond the execution date hereof except as shown on the Schedule of Contracts annexed to this agreement.

2.3 *Tax Returns and Tax Audits.* Seller has filed with the appropriate governmental agencies all required tax returns and tax reports. Seller has paid all taxes, assessments, fees and other governmental charged levied upon its assets and income, other than those not yet due and payable or delinquent.

2.4 *Litigation, Proceedings or Investigations.* No suit, action or legal, administrative, arbitration or other proceeding or governmental investigation is pending, or to Seller's knowledge is threatened against Seller or seller's Kermit Store, except:

  (a) Civil suit of Russell Ratliff and Charles E. Speers against Seller and Jim Wooley pending in the Circuit Court of Mingo County, West Virginia; and

  (b) Civil suit of Charles E. Speers against Seller and Jim Wooley pending in the Circuit Court of Mingo County, West Virginia.

2.5 *Equipment.* All equipment at Seller's Kermit Store is owned by Seller and not subject to any lease.

3. REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller as follows:

3.1 *Corporate Organization.* Buyer is duly organized, validly existing and in good standing under the laws of the Commonwealth of Kentucky and is authorized to conduct business in the State of West Virginia. Buyer has full power and authority to enter into this agreement and perform the transactions contemplated herein.

3.2 *Bulk Sales Law.* The parties hereto waive Seller's compliance with the provisions of West Virginia Uniform Commercial Code-Bulk Transfers provisions.

4. RISK OF LOSS

4.1 *Risk of Loss.* The risk of any loss, destruction or other damage, other than ordinary wear and tear, between the date of execution hereof and the completion of the Closing, shall be solely that of Seller. If before completion of the Closing, any of Seller's buildings, machinery or equipment are damaged by fire, casualty or any other cause:

  (a) If the replacement of repair cost is $50,000.00 or more, Buyer may either:

    (i) Terminate this agreement, without liability; or

    (ii) Complete the Closing hereunder, in which event Buyer shall be entitled to a credit equal to the insurance proceeds arising with respect to such damage.

  (b) If such replacement or repair cost, as the case may be, is less than $50,000.00, Buyer shall be obligated to complete the Closing hereunder and shall be entitled to the insurance proceeds arising with respect to such damages.

5

    4.2    Immediately after the Closing, risk of any loss or casualty, destruction or damage shifts to Buyer.

5. EMPLOYEES

    5.1    *Continuity.* All of Seller's employees at the Kermit Store are "employees at will," and none is under any contract of employment, nor is there a union contract. Buyer shall have no legal obligation to retain any employees. It shall be Buyer's responsibility to re-employ.

    5.2    *Data on Employees.* Subject to limitations of any Privacy Act or policy, before the Closing, Seller shall have delivered to Buyer a Schedule of Employees listing all persons employed by Seller, at Seller's Kermit Store showing as to each, the nature of the employee's job, age, years of service, the amount or rate of compensation, all accruals of vacation, sick leave, retirement benefits, and all other benefits due the employee and other matters which Buyer reasonably requests.

    5.3    *Employee Benefits.* Seller has no pension, profit sharing, annuity, savings or similar or related retirement plan for any of its employees at the Kermit Store. Employees of Seller may have individual 401(k) plans. Seller intends to terminate business operations at the time of closing, and Seller does not intend to continue a relationship with any of its employees thereafter.

6. MISCELLANEOUS

    6.1    *Brokerage.* Each party represents and warrants to the other that no broker is entitled to any commission, or similar fee, in connection with the making and carrying out of this agreement.

    6.2    *Entire Agreement; Modification.* This agreement supersedes all prior agreements and constitutes the entire agreement between the parties hereto with regard to the subject matter hereof. It may not be amended or modified except by an instrument executed by both parties.

    6.3    *Notices and Communications.* Any notice, payment, request, instruction or other document to be delivered hereunder shall be deemed sufficiently given if in writing and delivered personally or mailed by certified mail, postage prepaid, if to Buyer, addressed to it at the address first set forth above, and if addressed to Seller, addressed to it as first set forth above.

    6.4    *Non-waiver.* No delay or failure by either party to exercise any right hereunder, and no partial or single exercise of any such right, shall constitute a waiver of that or any other right, unless otherwise expressly provided herein.

6.5 *Governing Law.* This agreement shall be construed in accordance with and governed by the laws of the State of West Virginia.

6.6 *Binding Effect.* This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, successors and assigns.

6.7 *Expenses.* Except as otherwise expressly provided herein, each party shall pay all of its own expenses incidental to the negotiation and preparation of this agreement, and for entering into and carrying out the terms and conditions thereof and consummating the transactions, regardless of whether they are consummated. Provided, in the event of breach of this agreement, the prevailing party shall be entitled to an award of attorneys fees for enforcement of the terms of this agreement.

7. NON-COMPETE

7.1 *Exclusive Name.* For a period of five (5) years following the closing of this transaction, Seller covenants with Buyer that Seller shall not use the name "Sav-Rite" Pharmacy or similar variant, within a sixty (60) mile radius of Kermit, West Virginia.

7.2 *Non-Compete.* Seller covenants that Seller (individually and as an entity) and Seller's officers, directors and shareholders, members and managers shall not, for a period of five (5) years after the Closing, engage in the practice of pharmacy or the retail sale of pharmaceuticals either directly, or as an officer, shareholder, director, employee, member or manager, within a sixty (60) mile radius of Kermit, West Virginia.

7.3 *Non-Compete.* Buyer covenants that Buyer (individually and as an entity) and Buyer's officers, directors and shareholders, members and managers shall not, so long as any funds are due and owing Seller under the terms of this agreement, engage in the practice of pharmacy or the retail sale of pharmaceuticals either directly, or as an officer, shareholder, director, employee, member or manager, within a thirty (30) mile radius of Kermit, West Virginia.

This 31st day of October, 2011

**SELLER:**

STROSNIDER DRUG STORE, INC.,
a West Virginia corporation,
d/b/a Sav-Rite Pharmacy

By: _____
     (Jim Wooley)
Its: President

**BUYER:**

SOUTHFORK GENERAL MANAGEMENT LLC,
a Kentucky limited liability company

By: _____
     (Steven D. Williams)
Its: Manager

**PERSONAL GUARANTOR:**

_____
(Steven D. Williams)

8